IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
IN ADMIRALTY

| | |
|---|---|
| BRAD KNIGHTON and BRITNEY KNIGHTON, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF O.K., DECEASED MINOR CHILD, and AS GUARDIANS of O.B.K. and B.E.K. | Civil Action No.: |
| Plaintiffs, | |
| v. | COMPLAINT |
| COBALT BOATS, LLC, | |
| and | |
| MALIBU BOATS, LLC, | |
| and | |
| MALIBU BOATS HOLDINGS, LLC | |
| and | |
| MALIBU BOATS, INC. | |
| Defendants. | |

**NOW INTO COURT**, through undersigned counsel comes Brad Knighton, individually and as Personal Representative of the Estate of O.K. (collectively hereinafter referred to as "Plaintiffs"), Britney Knighton, individually, and Britney Knighton and Brad Knighton as the guardians and parents of O.B.K. and B.E.K. and file the following Claims against Defendants, Cobalt Boats, LLC, Malibu Boats, LLC, Malibu Boats Holdings, LLC and Malibu Boats, Inc.

**SUBJECT MATTER JURISDICTION**

1.     Plaintiffs invokes the subject matter jurisdiction of this Honorable Court under 28 U.S.C. §1333 (Admiralty) over his claims against Petitioner and Third-Party Defendants under Rule 9(h) of the Federal Rules of Civil Procedure.

**APPLICABLE LAW**

2.     This action arises and is governed by the General Maritime Law of the United States and is supplemented by the laws of the State of South Carolina.

**PARTIES**

3.     Brad Knighton is a Massachusetts resident, over eighteen years of age, the father of O.K. a minor who has passed away due to the subject maritime casualty, the husband of Britney Knighton, the father of O.K., O.B.K. and B.E.K. and the Personal Representative of the Estate of O.K. ("Estate of O.K.").

4.     Britney Knighton is a Massachusetts resident, over eighteen years of age, and the mother of O.K., O.B.K. and B.E.K..

5.     O.B.K. is a Massachusetts resident, under eighteen years of age, the brother of O.K.

6.     B.E..K. is a Massachusetts resident, under eighteen years of age, and the brother of O.K.

7.     Cobalt Boats, LLC ("Cobalt") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Neodesha, Kansas. At all relevant times, Cobalt designed, manufactured, tested, assembled, marketed, distributed, and sold recreational powerboats, including the 2006 Cobalt 232, and placed such vessels into the stream of commerce through the United States, including in South Carolina.

8.     Malibu Boats, LLC is a Delaware Company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all relevant times, Malibu designed, manufactured, tested, assembled, marketed, distributed, and sold recreational powerboats and placed their vessels into the stream of commerce through the United States, including South Carolina.

9.     Malibu Boats Holding, LLC is a Delaware Company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all relevant times, Malibu designed, manufactured, tested, assembled, marketed, distributed, and sold recreational powerboats and placed their vessels into the stream of commerce through the United States, including South Carolina.

10.     Defendant Malibu Boats, Inc. is a Delaware Company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all relevant times, Malibu designed, manufactured, tested, assembled, marketed, distributed, and sold recreational powerboats and placed their vessels into the stream of commerce through the United States, including South Carolina.

11.     Upon information and belief, Malibu Boats, Inc. own approximately 96% of Malibu Boats Holdings, LLC and is a publicly held corporation that has no parent corporation.

12.     Malibu Boats, LLC, Malibu Boats Holding, LLC, and Malibu Boats, Inc. are collectively referred to herein as "Malibu."

13.     Upon information and belief, Malibu acquired Cobalt in 2017.

14.     Cobalt Boats, LLC is a wholly owned subsidiary of Malibu Boats, LLC, a wholly owned subsidiary of Malibu Boats Holding, LLC, which in turn is majority-owned by Malibu Boats, Inc.

15.     Defendant Malibu is alleged to be liable as the successor-in-interest to, and/or parent of, the entity that designed, manufactured, tested, assembled, marketed, distributed, and sold the 2006 Cobalt 232 boat and placed the subject boat into the stream of commerce through the United States, including South Carolina.

## FACTUAL BACKGROUND

16.     This is a product liability action arising from serious injuries and death sustain by deceased minor child, O.K.K. on July 19, 2023, on the Intracoastal Waterway ("ICW") in Myrtle Beach, SC. O.K. was aboard a 2006 Cobalt 232 bowrider (the "Subject Boat") when the bow of the Subject Boat plunged beneath the surface – a well-known phenomenon referred to as "bow stuffing" or "swamping" – causing O.K. to be ejected from the open bow seating into the ICW, and into the path of the propeller of the 2006 Cobalt 232.

17.     O.K. suffered catastrophic and fatal injuries due to incised wounds of her thorax, abdomen and legs including lacerations to the left lung, diaphragm, and spleen, fractures to the right and left femur, and near-total amputation of the left leg.

18.     The Subject Boat is a 2006 Cobalt 232, Hull Identification Number FGE23028K506 ("HIN"), a 23-foot open-bow runabout powered by an inboard motor with rotating propeller.

### A.     The Cobalt 232 and Its Bow Seating Design

19.     The 2006 Cobalt 232 is an open-bow runabout designed, manufactured, marketed, and sold by Defendants with dedicated forward passenger seating in the bow of the vessel.

4

20. The 232's open bow contains upholstered seating, cup holders, grab handles, and stereo speakers, and was designed, advertised, and intended by Defendants as a featured amenity to be occupied by passengers, including children, while the vessel is underway.

21. Defendants' marketing materials, brochures, and dealer representations for the 232 depicted passengers riding in the bow seating area while the vessel was in motion, thereby communicating to consumers that riding in the bow while underway was a safe and intended use of the product.

### B. The Bow Stuffing Hazard

22. "Bow stuffing" occurs when the bow of a vessel penetrates rather than rides over oncoming water. It can occur when a vessel crosses a wake or wave at a speed; when the vessel decelerates rapidly, is overtaken by large wake, and is overtaken by its own stern wake; when the vessel is bow-heavy due to passenger weight distribution in the bow seating area; or in following seas.

23. Defendants knew, or in the exercise of reasonable care should have known, that open-bow vessels of this design are subject to bow stuffing creating a substantial risk that bow-seated passengers will be washed or thrown overboard directly into the path of the oncoming hull where they face being run over by the vessel and struck by its rotating propellor.

24. The risk of bow stuffing is materially increased by the very design feature Defendants promoted: placing passenger weight in the forwardmost section of the hull lowers bow freeboard and trim, making bow penetration of oncoming water more likely.

25.     The bow stuffing hazard, and the associated risk of passenger ejection and propellor strike, is not obvious to ordinary recreationally boat operators and passengers, who reasonably assume that seating provided and marketed by the manufacturer is safe to occupy while the vessel is underway.

26.     Upon information and belief, at all times prior to the manufacture and sale of the Subject Boat, Defendants knew or should have known of the bow stuffing hazard through, among other things: industry literature and marine safety publications; United States Coast Guard boating accident report data documenting ejections of bow passengers and propeller-strike injuries; accident reports, warranty claims, and customer communications concerning Defendants' own vessels; industry standards and practices, including those promulgated by the American Boat and Yacht Council (ABYC) and the National Marine Manufacturers Association (NMMA); and Defendants' own design, testing, and sea-trial experience with open-bow hulls.

### C.     Defendants' Failure to Warn

27.     Despite this knowledge, Defendants failed to provide adequate warnings and instructions to users, operators, and passengers of the 2006 Cobalt 232 concerning the risk of bow stuffing, the conditions under which it occurs, the catastrophic consequences of ejection from the bow seating area, and the operational limitations necessary to avoid it.

28.     The Subject Boat, as designed, manufactured, and sold by Defendants contained no adequate warning – by on-product placard, label at or near the bow seating area, owner's manual instruction, or otherwise – that: (a) bow stuffing can occur during reasonably foreseeable operation; (b) bow-seated passengers can be ejected into the path of the hull and propeller; (c) passengers should not occupy the bow seating area at speed, in waves or wakes, or under specified conditions; or (d)

specific operating limitations (speed, trim, wake-crossing angle, loading) were necessary to avoid the hazard.

29.    Adequate warnings and instructions were feasible, inexpensive, and consistent with industry practice, including permanently affixed pictorial warning placards in the bow seating area itself – the location where the hazard is encountered – conspicuously communicating the ejection and propeller-strike hazard and the conditions under which the bow must not be occupied.

### D.    The July 19, 2023 Accident

30.    On July 19, 2023, O.K. and her family were visiting her maternal grandparents in the Myrtle Beach, South Carolina area for a family vacation.

31.    A decision was made to go boating on O.K.'s grandfather's vessel a 23-foot 232 Cobalt bowrider pleasure vessel registered with the state of South Carolina ('Subject Boat" or "Recreational Vessel").

32.    O.K., Britney Knighton, O.B.K. and B.E.K., were passengers on the Recreational Vessel along with other family members.

33.    Quantum Leap Charters, LLC ("Quantum Leap Charters") is a South Carolina limited liability company and the owner or owner pro hac vice of a 2005 63' Bertram Vessel, M/V FEAR KNOT, assigned United States Coast Guard Hull Identification Number BERZ5004D4052023.

34.    Robert Powers ("Powers") is a South Carolina resident, over eighteen years of age, the captain and/or operator of M/V FEAR KNOT and the employee or agent of Quantum Leap Charters.

35.    At all material times, Powers was the captain of M/V FEAR KNOT and working within the course and scope of his employment or agency with Quantum Leap Charters.

36.    The Recreational Vessel and M/V FEAR KNOT were proceeding in the Intracoastal Waterway north of Little River, South Carolina, a navigable waterway of the United States.

37.    At all material times, O.K. was seated near the bow of the Recreational Vessel and her mother Britney Knighton was seated closer to the stern of the Recreational Vessel.

38.    At all material times. Brad Knighton, O.B.K. and B.K. were located on a personal watercraft in the vicinity of the Recreational Vessel and M/V FEAR KNOT on the Intracoastal Waterway.

39.    M/V FEAR NOT stopped or slowed down in the Intracoastal Waterway due to another vessel.

40.    While M/V FEAR NOT was stopped or moving slowly in the Intracoastal Waterway, the Recreational Vessel overtook M/V FEAR NOT on M/V FEAR NOT's starboard side and the Recreational Vessel's port side.

41.    While the Recreational Vessel making its pass alongside the starboard side of M/V FEAR NOT, M/V FEAR NOT started to move forward on the Intracoastal Waterway.

42.    M/V FEAR NOT and Powers created a massive wake that struck the Recreational Vessel.

43.    M/V FEAR NOT's massive wake rocked the Recreational Vessel so severely that all of the people on the bow of the Recreational Vessel fell out of the vessel, including O.K.

44.    M/V FEAR NOT's massive wake rocked the Recreational Vessel so severely that most of the other people on the Recreational Vessel fell out of the vessel.

45.    While O.K. was in the water, she was struck by the Recreational Vessel's propellor.

46.    O.K. suffered catastrophic and fatal injuries due to incised wounds of her thorax, abdomen and legs including lacerations to the left lung, diaphragm, and spleen, fractures to the right and left femur, and near-total amputation of the left leg.

47. Due to O.K. bleeding very badly from her open wounds, she passed away from her injuries.

48. Prior to creating the massive wake, Quantum Leap Charters, M/V FEAR KNOT and/or Powers did not warn O.K. or the Recreational Vessel that they were going to create the massive wake.

49. Britney Knighton, O.B.K. and B.E.K. all witnessed O.K.'s death.

50. Understandably, Britney Knighton, OB.K. and B.E.K. all became very upset watching O.K. being killed and blood pouring out of her wounds and badly severed legs.

51. Before her death, O.K. suffered pre-death pain and suffering and mental anguish.

52. Brad Knighton, Britney Knighton, O.B. K. and B.E.K. have suffered sorrow, pain, emptiness and grief as a result of O.K.'s untimely death.

53. Brad Knighton, Britney Knighton, O.B. K. and B.E.K. have suffered mental anguish due to O.K.'s untimely death.

54. Brad Knighton, Britney Knighton, O.B.K. and B.E.K. have suffered loss of companionship due to O.K.'s untimely death.

55. Brad Knighton and Britney Knighton have incurred medical costs and funeral costs due to O.K.'s untimely death.

**CLAIMS FOR RELIEF**

**COUNT I – PLAINTIFFS' STRICT PRODUCTS LIABILITY: FAILURE TO WARN AGAINST ALL DEFENDANTS**

56. Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 34 as though fully set forth at length.

57. At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, and selling recreational powerboats, including the Subject Boat, and placed the Subject Boat into the stream of commerce.

58.     The Subject Boat reached Plaintiff and the operator without substantial change in the condition in which it was designed, manufactured, and sold.

59.     The Subject Boat was defective and unreasonably dangerous when it left Defendants' control because it lacked adequate warnings and instructions concerning the known or knowable risk of bow stuffing, passenger ejection from the open bow, and propeller strike, which risks were not obvious to or generally known by ordinary users and consumers.

60.     The absence of adequate warnings rendered the Subject Boat unreasonably dangerous for its intended and reasonably foreseeable uses, including carrying passengers in the bow seating area while underway.

61.     Plaintiff was using, and the Subject Boat was being operated in, a manner that was intended or reasonably foreseeable to Defendants at the time of incident.

62.     As a direct and proximate result of the Defendants' warning defect, Plaintiffs have sustained compensable injuries and damages, all of which will be shown more fully at the trial of this cause.

63.     O.K.'s Estate, Brad Knighton, Britney Knighton, O.B.K. and B.K. have sustained the following compensable elements of damages as a result of Petitioner's negligence and culpable conduct: medical bills, conscious pain and suffering, pre-death fear or fright, loss of enjoyment of life, mental anguish, loss of companionship, punitive damages, and grief, and/or other compensable damages.

## COUNT II – PLAINTIFFS' NEGLIGENCE/NEGLIGENT FAILURE TO WARN AGAINST ALL DEFENDANTS

64.     Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 44 as though fully set forth at length.

65.     Defendants owed a duty to exercise reasonable care in the design, manufacture, testing, marketing, and sale of the Subject Boat, including a continuing duty to provide adequate warnings and instructions concerning dangers known or reasonably knowable to Defendants that would not be apparent to ordinary users.

Defendants breached that duty by, among other things: (a) failing to warn operators and passengers of the bow stuffing hazard and its consequences; (b) failing to place conspicuous warnings at or near the bow seating area; (c) failing to provide adequate operating instructions and limitations; (d) marketing the bow seating area as safe for occupancy underway without qualification; (e) failing to adequately test and evaluate the bow seating configuration under foreseeable operating conditions; and (f) failing to issue post-sale warnings or advisories after acquiring further knowledge of the hazard.

66.     Defendants knew or reasonably should have known that users of the Subject Boat would not realize the danger of occupying the bow while underway, and that the absence of warnings created an unreasonable risk of serious bodily injury or death.

67.     As a direct and proximate result of the Defendants' warning defect, Plaintiffs have sustained compensable injuries and damages, all of which will be shown more fully at the trial of this cause.

68.     O.K.'s Estate, Brad Knighton, Britney Knighton, O.B.K. and B.K. have sustained the following compensable elements of damages as a result of Petitioner's negligence and culpable conduct: medical bills, conscious pain and suffering, pre-death fear or fright, loss of enjoyment of life, mental anguish, loss of companionship, punitive damages, and grief, and/or other compensable damages.

## COUNT III – PLAINTIFFS' BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST ALL DEFENDANTS

69.     Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 49 as though fully set forth at length.

70.     Defendants are merchants with respect to recreational powerboats and impliedly warranted that the Subject Boat was merchantable and fit for the ordinary purposes for which such vessels are used, including carrying passengers in its designated seating areas while underway.

71.     The Subject Boat, sold without adequate warnings of the bow stuffing hazard, was not merchantable and not fit for its ordinary purposes, in breach of the implied warranty of merchantability under U.C.C. § 2-314.

72.     O.K. was a person whom Defendants could reasonably expect to use, consume, or be affected by the Subject Boat, and any privity requirement is satisfied or excused under applicable law.

73.     As a direct and proximate result of the Defendants' warning defect, Plaintiffs have sustained compensable injuries and damages, all of which will be shown more fully at the trial of this cause.

74.     O.K.'s Estate, Brad Knighton, Britney Knighton, O.B.K. and B.K. have sustained the following compensable elements of damages as a result of Petitioner's negligence and culpable conduct: medical bills, conscious pain and suffering, pre-death fear or fright, loss of enjoyment of life, mental anguish, loss of companionship, punitive damages, and grief, and/or other compensable damages.

**COUNT IV – PLAINTIFFS' WRONGFUL DEATH AGAINST ALL DEFENDANTS**

75.     Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 55 as though fully set forth at length.

76.     On July 19, 2023, as a direct and proximate result of the wrongful acts, omissions, and defective and unreasonably dangerous condition of the Subject Boat described herein – including

Defendants' failure to provide adequate warnings of the bow stuffing, ejection, and propeller-strike hazards – O.K. was ejected from the open bow of the Subject Boat and struck by its propeller and died.

77.     Had O.K. survived, she would been entitled to bring an action against Defendants for the injuries sustained, and this action is brought by her natural parent and father, Brad Knighton, authorized as personal representative of O.K.'s Estate.

78.     O.K.'s beneficiaries, as a direct and proximate result of decedent's wrongful death, have suffered and will continue to suffer damages recoverable under applicable law, including: loss of decedent's financial support, services, gifts, and contributions; loss of decedent's society, companionship, comfort, guidance, counsel, care, protection, and consortium; mental anguish, grief and sorrow; and funeral and burial expenses.

79.     Defendants are jointly and severally liable to Plaintiffs, for all wrongful death damages permitted by applicable law, in an amount to be proven at trial.

## COUNT V – ESTATE'S SURVIVAL ACTION AGAINST ALL DEFENDANTS

80.     Plaintiffs incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth at length.

81.     Brad Knighton brings this Count pursuant to the survival statute, as personal representative of the Estate of O.K., asserting the causes of action that accrued to decedent prior to death and that survive the estate.

82.     Between the time of the accident and O.K.'s death, O.K. experienced conscious pain and suffering, pre-impact fear and terror, and mental anguish, and the Estate incurred medical, hospital, and related expenses for O.K.'s care and treatment, as well as funeral and burial expenses.

83.     As a direct and proximate cause of Defendants' wrongful conduct and the defective condition of the Subject Boat, the Estate of O.K. is entitled to recover all damages that O.K. could have recovered had O.K. survived, in an amount to be proven at trial.

## COUNT VI – BRITNEY KNIGHTON, O.B.K., AND B.E.K.'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

84.     Plaintiffs incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth at length.

85.     Plaintiffs, Britney Knighton, O.B.K., and B.E.K., as described in this Complaint, were passengers on the Subject Boat and ejected as a direct result of the wrongful acts, omissions, and defective and unreasonably dangerous condition of the Subject Boat described herein – including Defendants' failure to provide adequate warnings of the bow stuffing, ejection, and propeller-strike hazards.

86.     Plaintiffs, Britney Knighton, O.B.K., and B.E.K., experienced direct sensory and contemporaneous observation of:

a.     The conscious pain and suffering O.K. experienced immediately following the July 19th accident;

b.     The panic ensuing after the accident when O.K.'s condition was so critical that an attempted tourniquet was applied to her nearly severed legs;

c.     The limp, lifeless body of O.K. as the Recreational Vessel rushed to land for immediate medical attention on O.K.'s behalf;

87.     All of the damages claimed in this count are due to the wrongful acts, omissions, and defective and unreasonably dangerous condition of the Subject Boat described herein, witnessed, observed and experienced by Plaintiffs Britney Knighton, O.B.K., and B.E.K.

88.    As a result of the above wrongful acts, omissions, and defective and unreasonably dangerous condition of the Subject Boat described herein, Britney Knighton, O.B.K., and B.E.K. have suffered, and continue to suffer from physical and emotional injuries, including nightmares, sleeplessness, anxiety, depression, and other physical and emotional injuries directly related to the observed wrongful acts, omissions, and the careless, reckless and wanton acts of the Defendants.

## COUNT VII – PLAINTIFFS' PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

89.    Plaintiffs incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth at length.

90.    Upon information and belief, Defendants had actual knowledge — through prior incidents, accident data, warranty claims, industry publications, and internal testing — of the bow stuffing hazard and the risk of catastrophic ejection and propeller-strike injuries to bow passengers, yet consciously chose not to warn consumers, in reckless disregard of the rights and safety of others, in order to preserve the marketability and market share of the open-bow seating configuration.

91.    Defendants' conduct rises to the level of willful, wanton, and reckless indifference, entitling Plaintiffs to exemplary and punitive damages in an amount sufficient to punish Defendants and deter similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor against Defendants, jointly and severally, awarding:

a.    Compensatory damages, including past medical expenses, lost earning capacity, pain and suffering, mental anguish, disfigurement, disability, and loss of enjoyment of life, in an amount to be proven at trial and in excess of the jurisdictional minimum;

15

b.     Wrongful death damages on behalf of Decedent's statutory beneficiaries, including loss of financial support, services, and contributions; loss of society, companionship, guidance, care, and consortium; mental anguish, grief, and sorrow; and funeral and burial expenses;

c.     Survival damages on behalf of the Estate of Decedent, including Decedent's conscious pain and suffering, medical expenses, and lost earning capacity;

d.     Punitive and exemplary damages;

e.     Pre-judgment and post-judgment interest as allowed by law;

f.     Costs of suit; and

g.     Such other and further relief as the Court deems just and proper.

**BLUESTEIN LAW FIRM, P.A.**

By: s / S. Scott Bluestein
S. Scott Bluestein / Federal Id No. 6891
266 W Coleman Blvd., Suite 103
Mount Pleasant, SC 29464
Post Office Box 22253
Charleston, SC 29413-2253
Telephone:  843-577-3092
Facsimile:  843-577-3093
Email: scott@boatinglaw.us

AND

Co-counsel to be admitted *Pro Hac Vice*

**THE BEASLEY FIRM, LLC**

By: s/ Louis F. Tumolo
Louis F. Tumolo / PA Id. No. 314255
The Beasley Building
1125 Walnut Street
Philadelphia, PA 1910
Telephone: 215-931-2634
Facsimile: 215-592-8360
Email: louis.tumolo@beasleyfirm.com

**ATTORNEYS FOR PLAINTIFFS**

16

July 17, 2026
Mount Pleasant, South Carolina